UNITED STATES *v.* VANDEGRIFT & CO. (No. 1659).[1]

1. CONSTRUCTION.

The fact that the Board of United States General Appraisers had decided the expression "semivitrified," as applied to tiles, tariff act of 1897, to be "indefinite, meaningless, and incapable of a uniform understanding" does not justify a conclusion that, by repeating the expression in the tariff acts of 1909 and 1913, Congress deliberately continued to use the term as one which was "indefinite, meaningless, and incapable of a uniform understanding." This action by Congress should be taken to mean that, notwithstanding the board's decision, the term in question aptly applied, at the time of the later enactments at least, to certain kinds of tiles which were known to the trade of this country. The court should not impute to Congress the deliberate use of terms known and designed by it to be "indefinite, meaningless, and incapable of a uniform understanding."

2. SEMIVITRIFIED TILES, HOW DUTIABLE.

A preponderance of the evidence establishes that the term "semivitrified," as applied to tiles, had a well-known meaning in the trade at the time of the enactment of the tariff act of 1913 (which meaning, after all, was simply the ordinary or dictionary meaning of the word itself), and that the merchandise at bar aptly responds to it. Accordingly, it is dutiable *eo nomine* under paragraph 72.

United States Court of Customs Appeals, May 1, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7813 (T. D. 35895).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

Submitted on record by appellees.

[Oral argument Apr. 14, 1916, by Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in the present case is described on the invoice as "red ferrolite flooring tiles."

The appraiser returned the tiles as "semivitrified," and the collector accordingly assessed duty thereon at the rate of 5 cents per square foot under paragraph 72 of the tariff act of 1913.

The importers protested against the assessment, denying that the tiles were "semivitrified," and claiming them to be dutiable under the same paragraph at the rate of 1½ cents per square foot as "tiles, plain unglazed, one color, exceeding two square inches in size."

The protest was sustained by the Board of General Appraisers, and the Government appeals.

The following is a copy of paragraph 72, tariff act of 1913:

72. Tiles, plain unglazed, one color, exceeding two square inches in size, 1½ cents per square foot; glazed, ornamented, hand-painted, enameled, vitrified, semivitrified, decorated, encaustic, ceramic mosaic, flint, spar, embossed, gold decorated, grooved, and corrugated, and all other earthenware tiles and tiling, except pill tiles and so-called quarries or quarry tiles, but including tiles wholly or in part of cement, 5 cents

---

per square foot; so-called quarries or quarry tiles, 20 per centum ad valorem; mantels, friezes, and articles of every description or parts thereof, composed wholly or in chief value of earthenware tiles or tiling, except pill tiles, 30 per centum ad valorem.

It will be observed from the foregoing statement that the sole question in the present case is one of fact, namely, whether the imported tiles are semivitrified, and if not, whether they are plain unglazed tiles. The board has found upon the testimony in favor of the latter classification, and the court is now called upon to decide whether this finding is sustained by sufficient evidence.

In the tariff act of 1894 no provision was made for "semivitrified" tiles. That act apparently divided all tiles into two classes with respect to vitrification, namely, tiles which were "plain, * * * not vitrified" and tiles which were "vitrified." The following is a copy of paragraph 78 of the act of 1894:

78. Tiles, plain, not glazed, ornamented, painted, enameled, vitrified, or decorated, twenty-five per centum ad valorem; ornamented, glazed, painted, enameled, vitrified, or decorated, and encaustic, forty per centum ad valorem.

In the tariff revision of 1897 the classification of "semivitrified" tiles appeared for the first time in tariff enumerations. Paragraph 88 of that act reads as follows:

88. Tiles, plain unglazed, one color, exceeding two square inches in size, four cents per square foot; glazed, encaustic, ceramic mosaic, vitrified, semivitrified, flint, spar, embossed, enameled, ornamental, hand painted, gold decorated, and all other earthenware tiles, valued at not exceeding forty cents per square foot, eight cents per square foot; exceeding forty cents per square foot, ten cents per square foot and twenty-five per centum ad valorem.

In the case of the American Shipping Co., G. A. 6906 (T. D. 29744), decided May 11, 1909, the Board of General Appraisers heard testimony concerning the application of the new tariff term "semivitrified," and held upon the evidence then submitted that at the time of the enactment of the tariff act of 1897 there was no article which was definitely, uniformly, and generally known to the trade in the United States under the name of a "semivitrified" tile, and that the term "semivitrified" as applied to tiles was "indefinite, meaningless, and incapable of a uniform understanding." The testimony which was taken in the foregoing case is incorporated in the present record.

Notwithstanding this decision of the board, Congress again enumerated "semivitrified" tiles for duty in the succeeding tariff revisions of 1909 and 1913. As has been stated, the present case arises under the tariff act of 1913.

In the decision now upon appeal the board cited its former decision, which held that the trade in this country knew of no article bearing the name of a "semivitrified tile," and made the following comment thereon:

This decision of the board was not appealed by the Government and has stood and still stands undisturbed as the only judicial construction of the language of the tile paragraph as embodied in the act of 1897 applicable to tiles of this character. Within a few months after the publication of this decision, to wit, on August 5, 1909, Congress revised the tariff act of 1897, and in all material respects, so far as this class of merchandise is concerned, reenacted the provisions of 1897.

Again, in the revision of October 3, 1913, Congress reenacted the same language, in so far as this class of tiles is affected. It must be presumed that Congress had full knowledge of G. A. 6906, *supra*, and it is therefore a reasonable assumption that since the revisions made no change in the language designed to provide for rates of duty on tiles, except as to rates, the omission so to do was deliberate and in effect an acceptance by Congress of the judicial construction given the language of the prior act by the board.

Consistently with the foregoing views the board apparently rests its present decision in chief part upon the finding that the term "semivitrified tiles" in the act are without practical application, since there are no articles known to commerce in this country which respond thereto. The board also concludes that Congress had accepted the construction given the language of the prior act by the board, as above set out, and had used the same term again in the acts of 1909 and 1913 with the same application or lack of application theretofore imputed to it by the board.

We can not agree with the foregoing views. We think that th· use by Congress of the term "semivitrified tile" in the tariff acts of 1909 and 1913, after the board's decision against the term under the tariff act of 1897, does not imply that Congress had deliberately continued to use the term as one which was indefinite, meaningless, and incapable of a uniform understanding, but rather that Congress thereby intended to indicate that notwithstanding the board's decision the term in question aptly applied, at the time of the later enactments at least, to certain kinds of tiles which were known to the trade of this country. The court should not impute to Congress the deliberate use of terms known and designed by it to be indefinite, meaningless, and incapable of a uniform understanding. We may furthermore note the fact that vitrified tiles were concededly well known in trade at the time of the several enactments in question, and that the word "semivitrified" appears in standard dictionaries bearing a definition consistent with its obvious etymology. In the absence of trade testimony to the contrary this dictionary definition of the word should be adopted as likewise the trade definition thereof. The following authorities are quoted:

Century Dictionary:

*Semivitrified.*—Half vitrified, or imperfectly vitrified; partially converted into glass.

Webster's Dictionary:

*Semivitrified.*—Half or imperfectly vitrified; partially converted into glass.

Standard Dictionary:

*Semivitrified.*—Partly vitrified or changed into glass.

Upon a review of the present record we find that the board's decision upon the fact in issue is not sustained by the testimony. The convincing weight of the evidence in the case favors the view that for many years the term "semivitrified tile" was not known in the commerce of this country. Apparently all tiles were then divided in this particular into two classes only, namely, plain and vitrified. The former class was made up of soft, porous tiles which entirely lacked the quality of vitrification; the latter class consisted of tiles which were as fully vitrified as any then manufactured. During this period the tariff enumerations, following the trade conditions and nomenclature, provided for plain and vitrified tiles only, without mention of a semivitrified class. But about the time of the enactment of the tariff act of 1897 the trade took general cognizance of the existence of a class of tiles which occupied an intermediate position between these two classes. The tiles belonging to this class were not fully vitrified; nevertheless by reason of added materials at firing or of the degree of heat to which they were then subjected they were partially vitrified, and were thereby distinguishable on the one hand from the class of plain or wholly unvitrified tiles, and from the fully vitrified tiles upon the other hand. The dividing line between these classes might at times be indistinct; nevertheless the classes themselves when taken at large were clearly distinguishable from one another, and this fact was well known in the trade.

The testimony in the present record is voluminous, and only brief portions of it can here be copied. The following extracts, however, sufficiently state those facts which are sustained by the record according to our interpretation of it.

Hermann Petri:

Q. Are you familiar with the term semivitrified as applied to tiles?—A. I am.

Mr. RODE. I object because it hasn't been shown that there is a term semivitrified.

General Appraiser McCLELLAND. He says he is familiar with the term; objection overruled.

Exception.

Last question and answer repeated by the stenographer.

Q. How long have you been familiar with that term?—A. About 20 years.

Q. Is it a term which you find used throughout the wholesale trade in the United States with a definite, uniform, and general meaning—A. It is.

Q. That is, is your understanding and that of the trade with which you come in contact uniform and definite in reference to that term?—A. Yes, sir.

Q. Now, will you please tell us what the trade understanding of that term is?—A. A semivitreous tile is a tile that isn't burned as hard as a vitreous tile, and a vitreous tile is a nonabsorbent, but a semivitreous tile is absorbent to a certain extent.

Q. Can you, as one familiar with tiles. distinguish between vitrified and semivitrified tiles upon an inspection of any given samples?—A. I certainly can.

Q. How is the characteristic of semivitrification manifested in a given sample?

Mr. RODE. I object here at this point. The witness has spoken about a semivitreous tile and counsel has just used the term vitrified or semivitrified or semivitrification; I don't know whether those terms are synonomous and the same or not.

Q. Mr. Petri, do you use the term semivitreous and semivitrified with the same meaning?—A. Yes, sir.

Question repeated by the stenographer as follows: "How is the characteristic of semivitrification manifested in a given sample?"—A. Why, by the appearance of the tile, the texture of it, the ring to it, and also the absorption qualities.

Q. Are you capable of making those tests?—A. I am.

I show you the official sample in this case, and I will ask the board that they be marked in evidence as Exhibits 1 and 2 in order that they may be more easily identified; they seem to be duplicates, mark them Exhibit 1, I guess. [Two samples marked collective Exhibit 1.]

Q. Will you please examine those samples; do you deal in goods of similar character and description?—A. I do.

Q. How many years have you been handling them?—A. Twenty years or more.

Q. Will you please apply such tests as you are able to for the purpose of determining whether these are within the trade classification of semivitrified tiles?—A. They are both alike; do you want me to try both of them?

Q. (By Mr. RODE.) It is conceded they are alike.—A. According to my tests they are semivitreous tile.

Q. Having in mind the trade understanding or meaning of the term semivitreous tile as you have given it, state whether or not, at and prior to October 3, 1913, tiles like these were included in the trade class, semivitrified tiles.—A. They were.

Q. Has that always been true during your experience with semivitrified tiles?—A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. Now, will you please tell us what principal charcateristics distinguished the three classes of tiles you have testified about—that is, the plain unglazed, the semivitrified, and the vitrified?—A. The plain unglazed tile, as I said before, is a very soft tile, and is very absorbent, and it was used years ago more than it is now for the simple reason that it was about the only product we could get at that time; a little later a semivitrified tile was made which was less absorbent than the plain unglazed tile, and we kind of abandoned the idea of using the plain unglazed tile; then the manufacturers made the vitreous tile, which is a tile that doesn't stain; it is absolutely nonabsorbent and does not stain: ink may be dropped on it and marked on it without staining the tile.

Q. Do you have anything to do with the laying of tiles?—A. I do.

Q. Do you know whether the processes are the same or different with reference to the laying of the various tiles such as you have described?—A. They are different.

Q. Wherein do they differ?—A. The vitrified tile needs no soaking in water before it is laid; the semivitrified tile needs some soaking in water, but very little, before it is laid in the pad of cement, and the unglazed plain tile needs considerable soaking in water before it is laid in cement so as not to absorb all the water out of the cement it is in.

## Frederick R. Lawrence:

Q. Have you bought tiles from quite a number of manufacturers during your experience?—A. No, sir; I have bought all my tiles in the United States.

Q. Does the output of the several factories vary or are they all about uniform?—A. They are quite uniform

Q. Would you say that was true of the semivitrified and the unglazed tiles?—A. Yes.

Q. Both?—A. Yes.

Q. That the semivitrified tile of each of the factories would absorb to about the same degree?—A. Just about; they are all about the same standard.

Q. And that would also be true of the plain unglazed tile?—A. Yes.

Q. And you say that the output of one factory will not absorb any more than the output of another?—A. I would say not.

## Charles H. Brown:

Q. Do you come in contact with the wholesale buyers or sellers of tiles?—A. I do with sellers

Q. And generally speaking, all through the United States?—A. Yes.

Q. And have you come in contact with that trade for many years?—A. I have bought tiles for about twenty to twenty-two years.

Q. And you are familiar with the terminology of the trade as used by these wholesalers?—A. Yes, sir.

Q. Is the term vitrified tile a well understood term in the trade?—A. Yes.

Q. Is the term semivitrified tile well understood in the trade?—A. Yes.

Q. Is the term plain unglazed tile well understood in the trade?—A. Yes.

Q. And has the meaning of those various terms been uniform, definite, and general throughout your experience in the United States?—A. They always have; yes.

Q. Now, Mr. Brown, what are the identifying characteristics of vitrified tiles?—A. Their density, their nonabsorbent qualities, and because of their hardness.

Q. Will you please examine Exhibit 1, collective Exhibit 1; can you by any tests known to you determine to what class of tiles that belongs?—A. That is a semivitreous tile, pretty near to the vitreous tile, I should think—no, it is not a vitreous tile.

Q. Do you observe the fracture of the tile, and its ring?—A. Yes.

Q. It is absorbent?—A. That tile will absorb moisture, yes.

Q. Applying those tests of absorption, ring, and observing the fracture, can you determine the class to which that belongs?—A. That is a "semivit."

Q. Has that been true during all your trade experience?—A. Yes, sir; always.

## Emil Kohler:

Q. Are you familiar with the terms used by the trade?—A. I am.

Q. Are you familiar with the term vitrified tile?—A. I am.

Q. Are you familiar with the term semivitrified tile?—A. I am.

Q. Plain unglazed tile?—A. Yes, sir.

Q. Flint tiles?—A. Yes, sir.

Q. Are those all terms which have been used in the wholesale trade for many years?—A. Yes, sir.

Q. How many years?—A. As far back as I have been connected with the business, 17 years back.

Q. Have those various terms well-known, well-understood, and general trade understanding?—A. Yes, sir.

Q. What is the trade understanding of the term vitrified tile?—A. A vitrified tile is a tile which is impervious to moisture, and is, in fact, a tile that is absolutely nonabsorbent.

Q. What is the trade understanding of a semivitrified tile?—A. A semivitrified tile is a tile which is not altogether nonabsorbent; it absorbs to a small degree.

Q. With regard to the durability and density, which is the more durable?—A. The vitrified tile.

Q. And which is the denser?—A. The vitrified tile.

Q. With regard to the use, are the vitrified and semivitrified tile used for the same purposes?—A. They are.

Q. Is one more efficient than the other?—A. It is as regards durability?

Q. Which one?—A. The vitrified tile.

Q. Coming to the semivitrified tile as compared with the plain unglazed tile, is there any difference to your knowledge in the fracture exhibited?—A. There is.

Q. In what respect?—A. The latter is of a softer structure and a coarser body, and it is a great deal more absorbent and not as durable as the other.

Q. You have said the one and the other?—A. I am talking now about the plain unglazed tile which you have just asked me about.

Q. And the plain unglazed tile absorbs as much or more than a semivitrified tile?—A. Decidedly more.

Q. Is its durability greater or less than a semivitrified tile?—A. Decidedly less.

Q. Is it used in the same manner as the semivitrified tile?—A. No.

Q. Wherein do they differ?—A. The semivitrified tile has taken the place, to a great extent, of the plain unglazed tile.

Q. But do I understand that the plain unglazed tile has been superseded entirely?—A. Not entirely.

Q. It is still used in substantial quantities?—A. It is still used. I don't know about the quantities.

Q. (By General Appraiser McClelland.) Are you making any in your factory at all?—A. No, sir.

Q. What are the uses of the plain unglazed tile, to your knowledge?—A. The uses of unglazed tiles are to some extent for floors where there is not much traffic and also for ornaments on walls and mantels and wainscoting.

Q. But as a flooring tile it is not as efficient as the semivitrified tile?—A. It is not.

  *      *      *      *      *      *      *

Q. And now will you define a plain unglazed tile?—A. A plain unglazed tile is a porous tile made of a coarse body loosely put together and therefore more absorbent than any of the other two classes.

Hamilton Hazelhurst:

Q. Does the trade—are there any tests known to the trade by which you can readily distinguish between the three varieties of tiles which you have mentioned; that is, the semivitreous and the plain unglazed tile?—A. Only the tests that have been mentioned, the absorption test, and the fracture, and the ringing to tell how hard the tile is.

Q. Please examine Exhibit 1, that is the square sample there; please tell us whether the tile you have introduced here as a semivitreous tile is similar in character and structure to this Exhibit 1?—A. It is.

Q How many years have you been dealing in tiles of that character?—A. Since about 1902 we have made the small tiles of that description, but these larger ones only about two years.

Q. They differ only in size, do they?—A. That is all.

Q. Referring to Exhibit 1, was that included or excluded from the trade class of semivitrified on or just prior to October 3, 1913?—A. It has been known as a semi-vitreous for a number of years.

Q And how many years has the trade employed the term?—A. I think since the issuance of the American Encaustic Co.'s price list, which was put in evidence.

Q. Based on your experience in the trade, how long have such tiles been known as semivitreous tiles?—A. About 12 years, I should say.

The statements contained in the foregoing testimony are, indeed, contradicted by certain other witnesses; nevertheless, the facts therein set out are fully sustained by the testimony when considered together. We are therefore convinced from the record that the term "semivitrified," as applied to tiles posesssed a well-known meaning in the

trade at the time of the enactment of the paragraph now in question, which meaning, after all, was simply the ordinary or dictionary definition of the word itself, and that the present importations aptly respond to that description and are therefore dutiable as assessed.

The decision of the board is *reversed*.